IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**GARLAND MURRAY,**

       **Plaintiff**

**v.**                                                                    **Case No. 2:17-cv-03261**

**DAVID BALLARD,** *et al.***,**

       **Defendant.**

### **PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the court are the plaintiff's Motion for Summary Judgment (ECF No. 47) and the defendants' Motion for Summary Judgment (ECF No. 51). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### **FACTUAL BACKGROUND AND UNDISPUTED FACTS**

On June 13, 2017, the plaintiff filed a Complaint alleging violations of his Eighth and Fourteenth Amendment rights and certain provisions of the West Virginia Constitution, as well as state law claims of negligence and assault and battery, arising out of two falls suffered by the plaintiff in his cell and the defendants' conduct while moving the plaintiff to the medical unit following the second fall.

The plaintiff alleges that, for some time, he had been complaining to correctional staff about overflow water coming into his cell from a handicapped ramp that had been placed outside the shower next to his cell. Although work orders had allegedly been completed for the maintenance staff to repair the issue, the problem was still occurring.

The plaintiff alleges that he slipped and fell in the water in his cell on April 9, 2017, and again on April 11, 2017.

After his alleged fall on April 9, 2017, the plaintiff was taken to the medical unit to treat a cut to his head. However, he was returned to the same cell, and the second alleged fall occurred two days later when water again flooded his cell. The plaintiff contends that, after the second fall, he blacked out and, at some point, urinated and defecated on himself. When correctional officers came to assist him, they placed him on a backboard to take him down the steps. The plaintiff alleges that the officers dropped and dragged him down the steps, laughed and used racial slurs against him, and roughly transported him to the medical unit.

Once in the medical unit, the plaintiff claims that he asked to take a shower because he was covered in bodily fluids. However, he alleges that he was held in the medical unit for observation for 24 hours without a shower and was not permitted to shower for another six days. The plaintiff further alleges that, while he was housed in the medical unit, Sgt. Mitchell, C.O. Dempsey, and other night shift correctional staff went into his cell and took or destroyed his personal property without documenting what had been taken or why.

On July 25, 2018, the plaintiff filed a document titled "Submittions for Summary Judgment (ECF No. 47), which has been construed as a Motion for Summary Judgment. The plaintiff's motion addresses the merits of the plaintiff's substantive claims for relief. However, on August 6, 2018, defendants Ballard, Rubenstein, Lt. Dempsey, and Cpt. McKinney filed a Motion for Summary Judgment (ECF No. 51), in which defendants C.O. Dempsey and Sgt. Mitchell have joined (ECF No. 53), which asserts that the plaintiff failed

to properly exhaust his administrative remedies concerning all of the claims contained in his Complaint.

Pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was notified that he had the right and an obligation to file a response to the defendants' Motion for Summary Judgment, and could submit affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position on the exhaustion of administrative remedies. On August 23, 2018, the plaintiff filed a Response in Opposition to the defendants' Motion for Summary Judgment (ECF No. 57) and a Memorandum in support thereof (ECF No. 58), claiming, in pertinent part, that he diligently tried to send his grievances to the Commissioner, but they were never returned. Thus, the plaintiff's documents claim, without support therefore, that it was defendants Ballard and Rubenstein who were not following the Policy Directive.

On September 6, 2018, the defendants jointly filed a Reply brief (ECF No. 62), which includes Defendant's Exhibit H, showing the plaintiff's inmate debt transactions for postage between April 1, 2017 and May 31, 2017, as well as the vouchers he had completed for such transactions, and the envelopes to whom such mail had been sent. On December 14, 2018, the undersigned conducted a hearing on the parties' Motions for Summary Judgment, focusing on the exhaustion issue.

During the hearing, the plaintiff suggested that he may have mailed some of his grievance appeals to the Commissioner of the Division of Corrections with stamps he had previously purchased, which would not be reflected on his voucher statement. The undersigned directed defense counsel to inquire into whether the prison maintained any log of outgoing legal or privileged mail which would reflect mailings that were not funded through vouchers.

3

On December 17, 2018, counsel for defendants Ballard, Rubenstein, McKinney, and Lt. Dempsey filed a Supplemental Reply (ECF No. 69) indicating that mail sent to the Commissioner's Office is considered to be privileged mail that is kept on the inmate's legal mail log. Attached to the Supplemental Reply as Exhibit J is the plaintiff's outgoing legal mail report from April 1, 2017 to May 30, 2017 (ECF No. 69, Ex. J), which will be discussed *infra*.

## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment does not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Instead, the court draws any permissible inferences from the fact in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)

## ANALYSIS

The issue of exhaustion of administrative remedies is a threshold issue that the court must address before it can consider the merits of the plaintiff's substantive claims for relief. Thus, the undersigned will first focus on the defendants' Motion for Summary Judgment.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison-condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (quoting *Anderson v. XYZ*

4

*Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners exhaust administrative remedies within the prison before filing a civil action." *Id.*

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any . . . correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court of the United States held that exhaustion of administrative remedies is mandatory, regardless of the type of relief sought or offered through the administrative procedures. *Id.* at 741. In *Booth*, the Court required exhaustion even where the grievance process does not permit the award of money damages, and the prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action. *Id.*

"Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).

5

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D. W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c). The WVPLRA defines an ordinary administrative remedy as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life . . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong." *Id.* § 25-1A-2(a). Under the WVPLRA,

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

W. Va. Code § 25-1A-2(d).

While "failure to exhaust available administrative remedies is an affirmative defense," it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). If a plaintiff fails to exhaust his or her administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law. *See Legg*, No. 2:16-cv-01371, 2017 WL 72604, at *2. Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law

6

to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv-10648, 2017 WL 4004579, at \*3 (S.D. W. Va. 2017) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)).

West Virginia Division of Corrections Policy Directive 335.00(V)(D)(1), which was in effect at the time of the incidents described in the plaintiff's Complaint, provides that, "should the inmate believe that the Warden/Administrator's response does not resolve his/her grievance . . . , the inmate may submit an appeal to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response or the time for the response has passed." (ECF No. 51, Ex. G at 8). That section further provides that only one grievance may be mailed by first class mail in each envelope. (*Id.*)

With his Complaint, the plaintiff submitted copies of a number of grievances he filed, to which he had received responses at the Unit Manager and Warden levels, along with several letters that either he or his counsel in another matter had written to the Commissioner of the West Virginia Division of Corrections, suggesting that the plaintiff had not received responses to those grievances from the Commissioner. Specifically, the plaintiff wrote a letter to Acting Commissioner Loita Butcher, which is dated May 22, 2017, stating that his attorney had advised him to "resend" his grievances to her by certified mail, because he had not previously received responses from the former Commissioner Jim Rubenstein. (ECF No. 1, Attach. 1 at 4).

Additionally, on May 30, 2017, attorney Jennifer Wagner, with Mountain State Justice, who was and is representing the plaintiff in two other matters filed in this court, wrote a letter to the Commissioner's Office suggesting that the plaintiff had previously submitted the grievances listed in the letter, but had received no responses thereto, and requesting that the 2017 grievances be reviewed and a response provided to each. (*Id.* at

7

1-2). A similar letter had previously been sent by Ms. Wagner on the plaintiff's behalf on December 21, 2016, concerning six grievances filed in 2016. (*Id.* at 3). Thus, the plaintiff contends that he attempted on several occasions to obtain responses to his grievances from the Commissioner, to no avail.

The defendants contend that, of the various grievances filed with his Complaint, only three of them pertain to the plaintiff's claims for relief.[1] The defendants' Motion for Summary Judgment asserts that, from the available documentation, it is apparent that the plaintiff failed to timely mail his grievance appeals to the Commissioner's Office in accordance with Policy Directive 335.00 and, thus, the plaintiff failed to properly exhaust his administrative remedies concerning any of the claims in his Complaint. Therefore, the defendants assert that they are entitled to summary judgment on that basis.

The plaintiff asserts that the court should find that he diligently attempted to exhaust his administrative remedies by making several attempts to get the Commissioner's Office to respond to his grievances. He further contends that defendants David Ballard and Jim Rubenstein, both of whom were removed from their positions with the Division of Corrections, failed to comply with the requirements of Policy Directive 355.00, and have allegedly denied him the ability to exhaust his administrative remedies in order to pursue this litigation. Thus, the plaintiff contends that the failure to properly exhaust should not be held against him because it is essentially the fault of these defendants.

---

[1] Specifically, the defendants contend that only Grievance Nos. 17-MOCC-Q2-157, 17-MOCC-Q2-166, and 17-MOCC-Q2-180 pertain to the issues addressed in the plaintiff's Complaint. During the hearing, the undersigned suggested that as many as ten of the grievances listed in Ms. Wagner's May 30, 2017 letter potentially implicated the issues addressed in the Complaint. The plaintiff suggested that all of the grievances should be considered.

8

The defendants' Reply brief contends that there is no evidence that the plaintiff sent any grievances to the Commissioner's Office between April 1, 2017 and May 24, 2017, when he sent all of his 2017 grievances, collectively, to the attention of Loita Butcher, who was then the Acting Commissioner. The defendants' Reply was filed after the plaintiff's deposition. During his deposition, the plaintiff testified that his mail vouchers for the relevant time period should demonstrate that he timely mailed his grievance appeals to the Commissioner. (*See* Dep. of Garland Murray, No. 2:17-cv-03261, Aug. 9, 2018, at 24-25, which has been separately ordered filed as Court's Exhibit A).

However, as demonstrated by Defendant's Exhibit H, attached to their Reply, the only mail voucher pertaining to mail sent to the Commissioner's Office during that time period appears to be the mail sent to Loita Butcher. The voucher for that mail is dated May 23, 2017, and the corresponding envelope appears to have been processed and mailed on either May 23 or 24, 2017. Accordingly, the defendants assert that there is no tangible evidence to demonstrate that the plaintiff mailed each individual grievance appeal to the Commissioner's Office in accordance with the Policy Directive and, thus, no evidence to demonstrate that he exhausted the final level of the administrative remedy process concerning any of his grievances that potentially relate to his Complaint.

During the motions hearing on December 14, 2018, the plaintiff indicated that he may have mailed some of his grievance appeals by way of first-class mail with stamps and envelopes he already possessed, and thus, he did not need a voucher for the postage. As noted above, the undersigned requested that defense counsel check with the Mount Olive Correctional Complex to determine whether there is an outgoing mail log that would indicate when and to whom mail had been sent that might confirm mailings not reflected in the voucher transactions provided in Defendants' Exhibit H.

The Supplemental Reply filed by the defendants on December 17, 2018 includes Defendants' Exhibit J, which is the plaintiff's outgoing legal/privileged mail log for the time period between April 1, 2017 to May 30, 2017. The Supplemental Reply indicates that mail sent to the Commissioner's Office is considered "privileged mail," which would be reflected on this mail log. Again, however, according to Exhibit J, the only mail sent to the Commissioner's Office during the relevant time period was the letter sent to Loita Butcher. Thus, the defendants reiterate that there is no evidence of record to demonstrate that the plaintiff mailed each individual grievance appeal to the Commissioner's Office in accordance with Policy Directive 355.00(V)(D)(1).

The evidence of record does not demonstrate that the plaintiff complied with this section of the Policy Directive. Even taking the evidence of record in the light most favorable to the plaintiff, the earliest evidence of the plaintiff sending any grievances related to the incidents alleged in his Complaint to the Commissioner's Office is the letter he sent to Loita Butcher dated May 22, 2017, which was mailed on either May 23, 2017 or May 24, 2017. That letter, which collectively enclosed 23 grievances does not demonstrate that the plaintiff had mailed each of those grievance appeals to the Commissioner's Office within five days of receiving the Warden's response to each grievance. Moreover, the evidence concerning the plaintiff's voucher transactions and his outgoing legal/privileged mail log also fails to demonstrate such timely mailings by the plaintiff.

In *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016), the Supreme Court clarified that "the exhaustion requirement hinges on the 'availability' of the administrative remedies. An inmate . . . need not exhaust unavailable remedies." *Id*. The Court further defined "available" as "'capable of use' to obtain 'some relief for the action complained of.'" (*Id*. at 1859, citing *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Fourth Circuit has also

held that an administrative remedy is not "available" if a prisoner, through no fault of his own, was prevented from availing himself of it. *Moore, supra*, 517 F.3d at 725. However, the plaintiff herein has not adequately demonstrated that the administrative remedy process was unavailable to him.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not properly exhausted his administrative remedies concerning the claims addressed in his Complaint and he has not demonstrated that such remedies were unavailable to him. Moreover, because the plaintiff has failed to exhaust his administrative remedies, the defendants are entitled to judgment as a matter of law on all of the claims in the Complaint, and the plaintiff is not entitled to judgment as a matter of law as pled in his Motion for Summary Judgment.[2]

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 51), **DENY** the plaintiff's Motion for Summary Judgment (ECF No. 47), and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if mailed) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this

---

[2] These findings and recommendations would also apply to the claims against the unidentified defendants, who have not been served with process in this matter.

Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985*); United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on the opposing parties and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

December 19, 2018

Dwane L. Tinsley
United States Magistrate Judge